UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JESSE CARL TOOMER                                                     PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:20-CV-374-LG-RPM

TYRONE NELSON, ET AL.                                                 DEFENDANTS

## REPORT AND RECOMMENDATIONS

Plaintiff Jesse Carl Toomer ("Toomer"), proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint on December 21, 2020. Doc. [1]. Toomer's allegations stem from his incarceration as a pretrial detainee at the Jackson County Adult Detention Center ("JCADC") in May 2021. He is currently incarcerated for manslaughter and sexual battery charges. Doc. [82], at 13. The undersigned notes that Toomer is a frequent prisoner litigant and has filed at least six lawsuits in the Southern District of Mississippi in recent years. Toomer raises various claims including conditions-of-confinement, inadequate medical care, inadequate dental care, and religious freedom claims. On February 9, 2022, the Court conducted an omnibus hearing.

Defendants Jonathan Blakeney and Jennifer Bobo move to dismiss Toomer's conditions-of-confinement claim regarding an alleged "lockdown." Doc. [119]. Defendants Geneva Drummond and Mackenzie Stover move to dismiss Toomer's inadequate medical care claim. Doc. [121]. Defendants Mike Ezell and Tyrone Nelson move for summary judgment on Toomer's remaining conditions-of-confinement claims. Doc. [123]. Defendants Amanda Harris and Vital Core Medical move for summary judgment on Toomer's inadequate medical care claim against them. Doc. [125]. Lastly, Defendant Summit Food Services moves for summary judgment on Toomer's religious freedom claims. Doc. [127].

## I. APPLICABLE LAW

### a. Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "All facts and inferences must be viewed in the light most favorable to the non-movant." *Koerner v. CMR Constr. & Roofing, LLC*, 910 F.3d 221, 227 (5th Cir. 2018) (citing *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

b.  Failure to State a Claim Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to plaintiff. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

**II. DISCUSSION**

a.  Lockdown Conditions Claim

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The test for deliberate indifference has both an objective and subjective prong. For the objective component, prisoners must

show that they are "incarcerated under conditions posing a substantial risk of serious harm" or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions. *Id. See also Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (stating that the alleged deprivation must be "objectively, sufficiently serious"). For the subjective component, the prison official must have acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834; *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). A prison official's culpable state of mind is one of deliberate indifference, which is defined as knowingly disregarding an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The subjective component need not be examined if the plaintiff does not objectively demonstrate a sufficiently extreme deprivation of minimal civilized measure of life's necessities. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

On March 11, 2021, Toomer claims that he was in a holding cell reading a book aloud. According to Toomer, then Defendant Deputy Jennifer Bobo ("Bobo") placed him in hand cuffs and moved him to a transport holding cell without a toilet and drinking water. Doc. [27], at 1; Doc. [23-1], at 1; Doc. [34], at 4. Toomer asserts this housing arrangement lasted for three hours. During that time, Toomer alleges Bobo and Defendant Sergeant Jonathan Blakeney ('Blakeney") would not let him use the bathroom. He contends he was forced to urinate on the cell's floor. *Id.* at 1–2. Bobo and Blakeney move to dismiss Toomer's claims arguing he fails to allege conditions that rise to the level of a constitutional violation. Doc. [119]. In his response to the motion, Toomer states that the absence of a toilet was humiliating, degrading, and a wanton infliction of pain. Doc. [134], at 2.

The undersigned recommends that Bobo and Blakeney's motion to dismiss be granted. Doc. [120]. Toomer, by his own admission, was confined to the holding cell only for a period of "three or four hours." Doc. [82], at 22. He has not demonstrated that he was exposed to a substantial risk of serious harm, or he was deprived of "the minimal civilized measure of life's necessities" as a result of the Defendants' actions. *Farmer*, 511 U.S. at 834. He does not allege that he suffered any injuries from the

confinement or encountered any filthy conditions. The conditions were brief and do not rise to the level of a constitutional violation. *See Crowley v. Austin*, 2018 WL 3381494, at *3 (W.D. La. May 29, 2018) (holding three days in holding cell without a bed, running water or toilet is not sufficient to rise to the level of a constitutional violation); *Young v. Ledet*, 2021 WL 799683, at *21 (E.D. La. Jan. 15, 2021) (dismissing as frivolous allegations that an inmate was held for three days in an unsanitary cell with no drinking water or shower access for eight days because the claims were about temporary conditions); *Duvall v. Burns*, 2016 WL 7664308, at *1, *5–7 (E.D. Tex. Oct. 24, 2016) (ruling that a weekend in a cell where the inmate could not take a shower or flush the toilet, but was supplied drinking water with meals, failed to satisfy the objective component for an Eighth Amendment violation); *Eady v. Head*, 2006 WL 2663776 (W.D. Tex. Sept. 15, 2006) (holding two days without shower and exposure to the foul smell of a backed-up shower did not show deliberate indifference to the plaintiff's basic human needs). Further, at the omnibus hearing Toomer stated that he was suing Blakeney because of his supervisory role. Doc. [82], at 60. The doctrine of *respondeat superior* does not apply to Section 1983 claims. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Thus, the undersigned finds that Bobo and Blakeney's motion to dismiss should be granted. Doc. [119].

b. <u>Inadequate Medical Care Claims</u>

Toomer brings an inadequate medical claim against Defendants Deputy Geneva Drummond ("Drummond") and Deputy Makenzie Stover ("Stover"). Doc. [24]. Drummond and Stover move to dismiss Toomer's inadequate medical claim against them. Doc. [121]. They argue Toomer has failed to allege that they were deliberately indifferent to his medical needs. Also, Defendants argue Toomer has failed to show more than a *de minimis* injury.

Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)). A plaintiff must prove: "(1) the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and (2) he must also draw the inference." *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, (1994)). A plaintiff must provide evidence demonstrating that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino,* 239 F.3d at 756. "Where the plaintiff alleges a delay in medical treatment, that delay must have resulted in substantial harm for the prisoner to recover." *Davis*, 35 F.4th at 963.

Toomer alleges he requested medical assistance but was left unconscious lying in his cell overnight. In a document labeled "affidavit," Toomer states he "sat in the cell all night in pain and sick without medical coming to help" after he told deputies he was having a "medical emergency." Doc. [21-1], at 1–2. He alleged his blood pressure was "extremely high." *Id*. at 1. At the omnibus hearing, he testified that he "remember[ed] throwing up and passing out." Doc. [82], at 29. He asserted that "dealing with Drummond, she was the one, when she came around, I told her personally during the count that I was sick and I needed to see medical, and she said she would tell medical, and she never told medical." *Id*. at 29. Later, Toomer reiterated "Yes, I asked Deputy Drummond for some help. She said that she would notify medical, but she never notified medical." *Id*. at 44. Regarding Stover, Toomer testified "I remember pressing the button, and Stover is the one that came across the mic, and Stover said she would get me some help, and she never called." *Id*. at 47. He alleged that a nurse checked on him the next morning and explained that the medical team was not made aware of his illness. *Id*. at 45; Doc. [21-1], at 2. As for any injuries, Toomer reiterated that he "passed out . . . and laid on the floor for no telling how long." Doc. [82], at 45.

"The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Toomer has alleged facts which if true would demonstrate that Drummond and Stover were deliberately indifferent or knew of but disregarded a substantial risk of harm to his health. While under oath, Toomer alleged facts indicating Defendants were denying or delaying him access to medical care. The Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).

The Fifth Circuit has found deliberate indifference when the plaintiff alleges facts of an apparent or obvious risk to a prisoner's health, supporting an inference that the official had "actual awareness" of a serious medical need. *United States v. Gonzales*, 436 F.3d 560, 573–74 (5th Cir. 2006). The Fifth Circuit has defined a serious medical need as one which is "so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12.  When "balancing the needs of the prisoner against the burden on the penal system, the district court should be mindful that the essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981); *see also  Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir.  2003) (inferring deliberate indifference when a minor was unconscious and vomiting for two hours before officials sought medical help); *Harris v. Hegmann*, 198 F.3d 153, 159–60 (5th Cir. 1999) (finding deliberate indifference when prison officials ignored repeated requests for immediate, emergency care and ignored multiple reports of "excruciating pain"); *Walker v. Pohlmann*, 2021 WL 2579803, at *8 (E.D. La. June 23, 2021) (finding plaintiff alleged facts indicating a serious medical condition or objective exposure to a substantial risk of harm when he experienced drug withdrawal symptoms including nausea and vomiting); *Garcia v. City of Lubbock, Texas*, 487 F. Supp. 3d 555, 569 (N.D. Tex. 2020) ("[t]he risk of serious harm that is associated with the failure to provide medical care for an unconscious individual under the circumstances present here seems obvious").

Therefore, the undersigned finds Toomer has stated a claim upon which relief can be granted. No evidence has been submitted to the Court to prove or disprove any claim. The undersigned concludes that Defendants Drummond and Stover's motion to dismiss should be denied and Toomer's claim of inadequate medical care against these Defendants in their individual capacities should survive.

c.  Conditions-of-Confinement Claims

Defendants Sheriff Mike Ezell and Captain Tyrone Nelson move for summary judgment on Toomer's claims against them. Doc. [123]. In his complaint, Toomer alleged numerous conditions-of-confinement claims including frequent lockdowns, his dissatisfaction with COVID-19 protocols, denial of outdoor exercise, lack of windows, and excessively hot showers.[1] On February 12, 2021, Toomer was required to respond to the Court and explain how Sheriff Ezell and Captain Nelson violated his constitutional rights. Doc. [12]. He responded, "Mr. Nelson is the Captain of the Jackson County Adult Detention Center. He is the person who gives the orders to the other deputies." Doc. [14], at 2. Toomer further asserted that because Captain Nelson responds to prisoner grievances, he was responsible for the conditions at JCADC. *Id*. As to Sheriff Ezell, Toomer wrote, "Sheriff Mike Ezell is over all sheriff deputies at the Jackson County ADC including Mr. Tyrone Nelson . . . All final say so has to go thru [sic] him. So[,] a person in his authority [sic] should know how his jail is being run." *Id*. at 3. Thus, Toomer's remaining conditions-of-confinement claims appear directed at Sheriff Ezell and Captain Nelson.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.

---

[1] Except as to the shower issue, Toomer failed to raise these claims at the omnibus hearing. The undersigned finds that Toomer has effectively dropped these claims. *See Flores v. Livingston*, 405 F. App'x 931, 932 (5th Cir. 2010) (citing *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir.1987) (allegations at *Spears* hearing supersede allegations of complaint)). He also failed to raise most of these claims in his responses to the Court's orders requiring him to explain his claims. Doc. [14, 16].

1995) (per curiam) (internal quotations omitted)). Prison officials must provide humane conditions of confinement and ensure that inmates receive adequate food, water, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see, e.g., Bernard v. Tong*, 192 F.3d 126 (5th Cir. 1999) (per curiam) ("Bernard's complaint alleges mental injuries, but fails to allege any physical injuries. Thus, his action is barred under the PLRA." (citations omitted)). *See also Barrett v. Washington Cnty., Miss.*, 2007 WL 474947, at *1 (N.D. Miss. Feb. 9, 2007) ("[t]he plaintiff's case must be dismissed because he has suffered no physical injury").

Toomer has not alleged that he was physically injured by the conditions at JCADC. *See* 42 U.S.C. §1997e(e). In his complaint, he asserts generalized pain and emotional trauma. Doc. [1], at 4. However, he does not attribute those issues to any of the alleged conditions raised in his lawsuit. Doc. [1], at 21. Toomer must allege more than *de minimis* physical injury to state a claim for psychological or emotional damages regardless of the nature of the claim. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); 42 U.S.C. § 1997e(e). Toomer has failed to allege more than a *de minimis* physical injury.

Additionally, by Toomer's own admission, he merely sued Sheriff Ezell and Captain Nelson because of their supervisory roles. Doc. [82], at 48–49. As supervisors, Sheriff Ezell and Captain Nelson can only be held liable if they "affirmatively participated in the acts that cause the constitutional deprivation," or "implement unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dept. of Protective and Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Under this theory, Toomer must show Defendants "acted, or failed to act, with deliberate indifference to violations of [Toomer's] constitutional rights committed by [his deputies]." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Toomer has failed to allege any personal involvement whatsoever by the Defendants related to the

conditions at JCADC. He presents no allegations that Defendants acted with deliberate indifference or adopted a policy that deprived him of his constitutional rights.[2] He simply sued Defendants because of their supervisory roles, which is insufficient to overcome Defendants' motion for summary judgment. *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) ("Under § 1983, however, a government official can be held liable only for his own misconduct").

The undersigned also notes that many of Toomer's conclusory conditions-of-confinement allegations do not rise to the level of being denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. *See Harbin v. Turner*, 2017 WL 6626733, at *2 (N.D. Miss. July 20, 2017) (finding "[a] hot shower is not a 'basic human need' which [plaintiff] was denied for an unreasonable period of time"); *Valentine v. Collier*, 993 F.3d 270, 287 (5th Cir. 2021) (determining plaintiffs' vague allegations that officials did not properly wear masks was insufficient to show defendants "recklessly ignored a substantial risk of harm"); *Marlowe v. LeBlanc*, 810 F. App'x 302, 305 (5th Cir. 2020) (per curiam) (concluding the Eighth Amendment did not require an institution "to do more than it ha[d] already done to mitigate the risk" of COVID-19, including providing each inmate with two cloth masks); *Maze v. Hargett*, 200 F.3d 814, 1999 WL 1093469 *3 (5th Cir. 1999) ("[n]either the Supreme Court nor this court have specifically held that prisoners enjoy an absolute right to outdoor exercise"); *Simmons v. Hays County Sheriff's Department*, 2012 WL 12866672, *1 (W.D. Tex. Sep. 21, 2012), aff'd 552 F. App'x 348 (5th Cir. 2014) (rejecting claim of cruel and unusual punishment on claim of being "denied fresh air and daylight for up to seven weeks"); *Olds v. Emmett*, 2021 WL 4034128, at *4 (S.D. Tex. Sept. 3, 2021)

---

[2] Toomer takes issue with Captain Nelson's response to his grievances. Doc. [14], at 2. However, Toomer does not have a federally protected liberty interest in having a prison grievance investigated or resolved to his satisfaction. *Geiger*, 404 F.3d at 373−74. Therefore, an inmate does not suffer a constitutional violation when his appeal within the prison grievance system is "arbitrarily and capriciously denied." *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (finding "a prisoner does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances resolved to his satisfaction."); *Lewis v. Errington*, 2019 WL 6493934, at *2 (S.D. Miss. Dec. 3, 2019).

(explaining plaintiffs failed to allege the facility's lack of windows was not reasonably related to a legitimate governmental objective); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (inmate failed to state a claim after complaining of unsanitary practices, including inadequate ventilation, unsanitary water fountains, a bathroom located four feet from the dining area, toilets leaking water, and generally unsanitary living quarters). *Cf. Taylor v. Stevens*, 946 F.3d 211, 222 (5th Cir. 2019) (a prisoner articulated an Eighth Amendment claim after he was forced to live in two squalid cells where the entire surface—floors, ceilings, windows, walls, and water faucet—was covered with massive amounts of feces and emitted a strong fecal odor for six days).

Also related to Defendants Sheriff Ezell and Captain Nelson, Toomer alleges both Defendants "were grossly negligent in supervising subordinates who committed the wrongful acts." Doc. [16]. It is well settled that negligence, even gross negligence, does not implicate the Constitution and does not provide a basis for a Section 1983 claim. See *Farmer*, 511 U.S. at 835 ("deliberate indifference entails something more than mere negligence . . ."); *Eason v. Thaler*, 73 F.3d 1322, 1328–29 (5th Cir. 1996).

Based on all the above, the undersigned finds Toomer has not raised a genuine issue of material fact against Sheriff Ezell or Captain Nelson. He has not sufficiently alleged any personal involvement by the Defendants in the alleged constitutional violations or alleged more than a *de minimis* physical injury. Accordingly, he has failed to overcome Defendants' motion for summary judgment.[3]

d.  Inadequate Dental Care

At the omnibus hearing, Toomer alleged that he was denied dental treatment. He sued Amanda Harris ("Harris"), a nurse during his time at JCADC and her employer, Vital Core Medical ("Vital Core"). Toomer alleged that he was receiving 800 milligrams of Ibuprofen from his previous facility; but once at JCADC he only received 400 milligrams. Doc. [82], at 89. He asserted that Harris reduced the dosage

---

[3] To the extent Toomer seeks injunctive relief based on his conditions-of-confinement claims, his request is moot because of his transfer from JCADC, where the alleged violations occurred, to a different correctional facility. *See Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

of his ibuprofen and later removed the dosage altogether. Doc. [82], at 37–40. Harris and Vital Core move for summary judgment. Doc. [125]. They argue Toomer's allegations do not rise to the level of deliberate indifference.

Also pertaining to his pain medication, Toomer takes issue with his dental treatment plans. Doc. [147]. In response to the summary judgment motion, he notes his placement on several dental protocols, which included pain medication. The protocols lasted for about a week at a time. Then, he would be off the plan for around a month before starting another protocol. Doc. [147], at 3. The record indicates Toomer was provided several rounds of the dental protocols to manage his medical needs. Doc. [125-2], at 8. Toomer alleges he went "23 days before [I] was started on another protocol." Doc. [147], at 3. In essence, Toomer complains he was not provided an unlimited, constant pain medication plan.

As support for their motion, Defendants Vital Core and Harris present Toomer's medical records. The record demonstrates that Toomer received dental treatment by jail staff at least five times. Doc. [125-2]; Doc. [125-1]. Toomer was regularly seen and treated for dental conditions during his incarceration at JCADC. Defendants also provide a declaration from Harris stating she was a nurse at JCADC and had no authority to prescribe medication for Toomer. Doc. [125-1], at 3. She asserts that the lower Ibuprofen dosage was determined by one of the medical providers (a physician or nurse practitioner) and not the result of any unauthorized action by her. *Id*. at 4. Harris argues she could not have deliberately violated Toomer's constitutional rights because she had no ability to prescribe the treatment he sought. Doc. [126]. She also states that Toomer had the ability to purchase Ibuprofen at the jail canteen. *Id.* at 2. Toomer does not contradict this summary judgment evidence and merely disagrees with the treatment provided.

The undersigned concludes that Toomer cannot make out deliberate indifference because he merely disagrees with his treatment. Doc. [147]. *See Gonzales v. Isbell*, 456 F. App'x 466, 467 (5th Cir. 2012) (detainee's claim "regarding the ineffectiveness of his pain medication exhibits merely a

disagreement about his medical treatment, which is insufficient to raise a genuine dispute as to a material fact on a claim of deliberate indifference"). The Constitution guarantees prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012) (citing *Gobert*, 463 F.3d at 349)). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall*, 190 F.3d at 697. Prison officials are not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris*, 198 F.3d at 159. Toomer has not shown that Harris knew of or disregarded an excessive risk to his health or safety. She was not responsible for prescribing pain medication; and Toomer acknowledges that he received care. Toomer's disagreement with his type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Additionally, Toomer's claim against Vital Core cannot meet deliberate indifference because it is based on Vital Core's supervisory role. At the omnibus hearing, Toomer stated that he was only suing Vital Core because it was the employer of Amanda Harris. Doc. [82], at 52. Vital Core cannot be held liable for the acts of Harris. *See Oliver v. Scott*, 276 F.3d 742 & n. 6 (5th Cir. 2002); *see also Powell v. Shopco Laurel Co.*, 678 F.2d 504, 505–06 (1982) (holding that plaintiff could not recover against private state-employed company under Section 1983 based on theory of *respondeat superior*); *Laushaw v. Epps*, 2012 WL 3068733, at *4 (S.D. Miss. July 27, 2012). Toomer has failed to demonstrate that Vital Core affirmatively participated in any constitutional deprivation or implemented an unconstitutional policy. *See Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Moreover, Toomer fails to contradict the probative summary judgment evidence showing he received care.

Lastly, Toomer argued at the omnibus hearing that he was denied access to an off-site dentist. However, he also acknowledged that the jail was not sending patients to an outside dentist due to COVID-19. Doc. [82], at 92. Toomer's wish to visit an off-site dentist is merely a disagreement about his medical treatment. *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022) (citing *Johnson v. Treen*, 759

F.2d 1236, 1238 (5th Cir. 1985)); *see also Alfred v. Tex. Dep't Criminal Justice*, 80 F. App'x 926, 927–28 (5th Cir. 2003) (finding refusal to allow inmate to see a specialist did not amount to deliberate indifference to a serious medical need); *Ratliff v. McLane*, 2018 WL 6202130, at *4 (N.D. Tex. Nov. 9, 2018) (finding that although plaintiff may have desired examination by different medical professionals, "the fact that Defendants allegedly did not transport him for such an appointment, standing alone, does not violate the Constitution"); *Nelson v. Morris*, 2017 WL 2954649, at *3 (N.D. Miss. Jan. 9, 2017) (recommending dismissal of prisoner's deliberate indifference claim where he alleged defendants should have referred him to a "free world specialist").

The undersigned recommends Defendants Vital Core and Amanda Harris be granted summary judgment on all claims against them. Toomer fails to provide any evidence showing that Defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. He only provides unsubstantiated assertions. The record indicates he was provided extensive dental care. "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Thayer v. Adams*, 364 F. App'x 883, 890 (5th Cir. 2010) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

e. <u>First Amendment Claims</u>

i. <u>Free Exercise Claim</u>

First Amendment free exercise protections require the government to refrain from interfering with the religious beliefs and practices of individuals. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Therefore, a government regulation may lawfully interfere with the religious beliefs and practices of a prisoner if it is reasonably related to a legitimate penological

interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).[4] Prison officials are afforded great deference in carrying out their complex duties. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987); *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). The Fifth Circuit has never held that inmates of any faith enjoy a First Amendment right to the religious diet of their choice. Early Fifth Circuit decisions held that prisons need not respond to particularized religious dietary requests to comply with the First Amendment. *Kahey v. Jones*, 836 F.2d 836, 948 (5th Cir. 1998); *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986). In *Kahey*, the Fifth Circuit specifically held that the prison was not required to accommodate a Muslim inmate's requirements regarding the content and preparation of his food. *Id.* at 950–51. The court reasoned that the prison had a "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* at 950.

At the omnibus hearing, Toomer alleged he was served meals that did not conform with his Islamic religion while at JCADC. He stated that he was fasting for Ramadan and wished to eat his meals after sundown. After submitting a request to follow a Ramadan diet, Toomer indicated he was simultaneously provided a lunch meal and a "snack-bag" (consisting of a sandwich) around 11:00 AM. The snack-bag was in lieu of an evening meal. Doc. [82], at 54–57. Once on the Ramadan accommodated diet, Toomer complained about the accommodation. At the hearing, he stated: "I might [sic] would get nothing but snack bags. I didn't get what they had for lunch or what was served at the facility. I would have to eat snack bags mainly all week long." *Id.* at 55. As to the timing of the meals, Toomer stated that his meals

---

[4] In order to balance federal constitutional guarantees with the legitimate concerns of prison administrators, *Turner* found four factors relevant: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest; (2) whether alternative means of exercising the constitutional right are available; (3) what effect accommodating the exercise of the right would have on the prison system and resources; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights at low costs to valid penological interests. *Turner*, 482 U.S. at 89–91. No single factor is dispositive, and there is no requirement that all four factors be met. *Scott v. Mississippi Dep't of Corr.*, 961 F.2d 77, 80 (5th Cir. 1992). Where a regulation restricts First Amendment rights in a neutral fashion, it is likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 F. App'x 923, 932–32 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)).

"sometimes [sic] would be brought late and sometimes [they] would be brought early." *Id*. Toomer sued JCADC's food provider, Defendant Summit Food Services ("Summit"). When asked if the Ramadan meal issue was the only reason that he was suing Summit, Toomer confirmed it was the sole reason. *Id*. Summit moves for summary judgment. Doc. [127].

At the omnibus hearing, Toomer said he was too hungry to wait and eat his meal after sundown. Doc. [82], at 83. When asked if he could save the snack-bag until dinnertime, Toomer stated, "supposedly, yes, but the meals were so small that you usually just eat the snack pack with the meal." *Id*. at 74. Toomer stated that he would choose to eat both the lunch and snack-bag at the same time, before sundown. *Id*. Summit argues that it has not substantially burdened Toomer's practice of his religion because Summit does not control when the meals are served to the inmates. Doc. [128], at 6–10. As support, Summit provides an affidavit by the district manager overseeing JCADC, Kelton Cuevas, Cuevas explains that Summit does not control the times that the meals are scheduled to be served. Doc. [129-2].

As further support, Summit provides complaints submitted by Toomer on the jail kiosk. Toomer's kiosk entry indicates that Summit accommodated his religious beliefs:

> This complaint is to captain Nelson [.] I want you to know that your deputy served me a Ramadan food tray at 5:35 PM [which is] way before sundown. The tray was only sandwiches, that's it[.] [S]ome one [sic] took sandwiches from the snack bag [and] put them on a tray [.] I am supposed to have nutritional [,] wholesome food [.] I only received 2 meals today something has to be done this is unconstitutional to my religious belief.

Doc. [127-6].

Toomer made additional complaints, which further reveal that he was provided religious accommodations to receive meals after sundown. Toomer wrote to jail staff: "This is a complaint about how my food is served I am served a tray at 8:00 at night that has been setting up from that morning it is very cold it is supposed to be served hot not cold I am entitled to hot food like everyone else." Doc. [127-7]. Captain Nelson responded:

> Mr. Toomer, due to your religious beliefs we are doing the best we can to accomodate [sic] feeding you. The kitchen closes at 2 pm every day which makes kepping [sic] your

> meal hot until sunset. Would it be possible to give you two full sandwich bags to accommodate you during Ramadan? This would give you the caloric intake that we give to every other inmate in this facility. This reasonable accomodation [sic] should relieve you concerns during the entire month of Ramadan. Capt. Nelson

Doc. [127-7]. Toomer replied to Captain Nelson's by stating: "2 snack bags is unaceptabie [sic] mr.nelson i [sic] need fruits and vegetables like is on the hard trays to give me the caloric intake as everyone else i [sic] need the vitamins that just the sandwiches do not have." Doc. [127-7]. Toomer received an additional response that read, "Mr. Toomer, what you are saying is you want nutritional variety. Two snack bags after your breakfast before sunrise does fulfill [the] caloric intake for the day." *Id*.

At the omnibus hearing, Toomer stated that he had not observed Ramadan before or since his incarceration at JCADC. Doc. [82], at 57. He was also uncertain about the time of year Ramadan occurs and if it had a special diet. *Id*. at 56 and 84. When asked a second time if there was any reason beyond hunger that prevented him from eating after sundown, Toomer responded "my religion." Doc. [82], at 83. Toomer indicated that he was eating his lunch and snack-bag together; and thus, was not waiting until sundown to eat either meal. *Id*. at 74. Later at the hearing, Toomer also complained that he went almost twenty-four hours without being fed. *Id*. at 75. This allegation contradicts his earlier testimony and the documentary evidence. In his response to the motion for summary judgment, Toomer states that he was on "Ramadan for 1 [sic] week out of the month…" Doc. [134], at 7. In another filing, Toomer states he was "fairly new to his sufi [sic] Islamic Religion and with no classes . . . he feels humiliated by not know [sic] what to do." Doc. [19], at 2.

The undersigned concludes that Summit's motion for summary judgment should be granted. *See Rhodes v. Emergency Med. Servs.*, 2004 WL 3155427, at *3 (N.D. Tex. Dec. 22, 2004). Toomer has entirely failed to meet his burden of showing that a prison policy is not reasonably related to legitimate penological objectives. *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019) ("[a]plaintiff bears the

burden of proving that a prison policy, as applied, is not reasonably related to legitimate penological objectives"). Toomer has not alleged or identified any such policy. He also fails to show that Summit was personally involved in the constitutional deprivation as required under § 1983. In contrast, Summit provides record evidence indicating it does not control when meals are served. Doc. [129-2]. Toomer does not contradict this evidence.

Moreover, even if Toomer had shown personal involvement by Summit, he was still given reasonable opportunities to exercise his religion. "Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment directive that no law shall prohibit the free exercise of religion." *Reynolds v. Beasley*, 2018 WL 1462106, at *5 (S.D. Miss. Mar. 23, 2018) (quoting *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017)). "The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise . . . religious freedom.'" *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972)). Toomer's kiosk submissions and his own testimony at the omnibus hearing indicate he was given a reasonable opportunity to exercise his religious beliefs. Toomer was provided meals (a snack-bag) that he could eat after sundown. *See Alfred v. Shields*, 2015 WL 5821956, at *2 (W.D. La. Oct. 5, 2015). Toomer has failed to show a triable issue of fact in support of his claim that Summit burdened his practice of Islam. The record unequivocally shows Toomer received accommodations so he could exercise his religion. Doc. [127-6]; Doc. [82], at 18 and 57.[5]

Further, Toomer's complaint that his snack-bag lacked nutritional value, or the portion was too small also fails. Doc. [2]; Doc. [137], at 2. In *Kahey*, the Fifth Circuit held that the prison was not required to

---

[5] In his response to the motion, for the first time, Toomer alleges that "he had to be taken off Ramadan because of the way Defendants were feeding him." Doc. [134], at 7. Given Toomer's testimony about his unwillingness to wait and eat his snack-bag after sundown coupled with his repeated complaints about the snack-bag contents, Toomer's response seems to merely reference his own choice to no longer observe Ramadan. He does not allege any action by Summit to remove his accommodations or implement an unconstitutional policy.

accommodate a Muslim inmate's requirements regarding the content and preparation of his food. *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988). Toomer neither contends that his faith requires him to consume something other than sandwiches nor that the food provided violated any tenet of Islam. Summit provides an affidavit by a registered dietitian employed by Summit. The dietitian explains that Summit's menus are designed to follow dietary allowances and are recommended by the National Academy of Sciences' Food and Nutrition Board. Doc. [129-1]. Toomer has not disputed Summit's representations that the meals provided were adequate to meet his nutritional and caloric needs. *Id*. Thus, Toomer has not shown that the meals provided to him during Ramadan were nutritionally inadequate, unwholesome, or contained forbidden food and there is no evidence that he suffered any harm. *See Irsan v. Gonzalez*, 2018 WL 1967106, at *6 (S.D. Tex. Apr. 26, 2018). To the extent that Toomer would prefer Ramadan meals that were warmer or more nutritious, the Fifth Circuit has consistently held that prison officials "need not respond to particularized religious dietary requests to comply with the First Amendment." *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007) (citing *Kahey*, 836 F.2d 948)); *see also Omran v. Prator*, 674 F. App'x. 353, 355 (5th Cir. 2016) (per curiam); *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986). "If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander v. Carrick*, 31 F. App'x. 176, 179 (6th Cir. 2002) (per curiam) (citations omitted). To the extent there has been any imposition on Toomer's religious expression, the undersigned concludes Summit's interference with Toomer's religious beliefs and practices were reasonably related to a legitimate penological interest of security, staffing concerns, and a food services budget that must cater to a sizeable jail population. *Turner*, 482 U.S. at 89; *Irsan*, 2018 WL 1967106, at *6.

### ii.  RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), provides in pertinent part as follows:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a); *See Brown v. Collier*, 929 F.3d 218, 228–29 (5th Cir. 2019).

Toomer states that he seeks a claim under RLUIPA. Doc. [19]. RLUIPA prevents the government from imposing a substantial burden on the religious exercise of a person residing in or confined to an institution. 42 U.S.C. § 2000cc-1(a). While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows, ". . . a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 569–70 (5th Cir. 2004); *Holmes v. Davis*, 2021 WL 2152544, at *5 (E.D. Tex. Mar. 30, 2021). Given Toomer's complaints and omnibus testimony, the undersigned does not find Toomer has shown that Summit placed a substantial burden on the exercise of his religion. Doc. [82, 137]. In fact, it appears Summit went to great lengths to accommodate the exercise of Toomer's religious beliefs. As noted above, Summit has a legitimate penological interest in running a simplified prison food service rather than a full-scale restaurant. *Holmes*, 2021 WL 2152544, at *4 (citing *Kahey*, 836 F.2d at 950). Toomer presents no probative facts or evidence controverting the controlling precedent in this circuit. [6]

Lastly, relating to religious freedom, Toomer alleges he was denied a religious service because of his classification as a sex offender. He raises this allegation in response to Defendants Ezell and Nelson's

---

[6] To the extent Toomer alleges Summit failed to provide him three full meals a day, he does not have that right. *Bryant v. Davis*, 2019 WL 4781362, at *9 (E.D. Tex. Aug. 8, 2019) (citing *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986); *Flores v. TDCJ Transitional Planning Dep't*, 2015 WL 10436114, *2 (S.D. Tex., Nov. 17, 2015). The Fifth Circuit has held it is doubtful that prisoners missing 50 meals in five months were denied anything close to a minimal measure of life's necessities. *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998).

motion for summary judgment. He also states that he "asked for Muslim Delux [sic] beds but was denied." Doc. [134], at 7. However, Toomer did not raise these claims in his complaint, motions to amend, responses to show cause orders, or at the omnibus hearing. Doc. [1, 14, 16, 19, 82]. The undersigned will not consider these claims. The Fifth Circuit has held that, because "[a] properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests,'" it is not proper for a court to consider new theories of liability first raised in response to a motion for summary judgment. *De Franceschi v. BAC Home Loans Servicing, L.P.*, 447 F. App'x. 200, 204 (5th Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 698-99)).

   f.   Remaining Claims

Toomer has sued "John Doe" and "Jane Doe." Toomer has not identified the two individuals or presented specific allegations pertaining to these individuals. The discovery deadline has passed; and thus, the undersigned finds these claims should be dismissed without prejudice. Similarly, Toomer alleges an officer removed Toomer's religious items once he was booked at JCADC. Doc. [82], at 30. However, Toomer has failed to identify the officer. At the omnibus hearing, Toomer could not name the individual responsible. *Id.* at 28-30. Over a year later, he still has not identified any alleged bad actor. He has also not alleged that any supervisory Defendants had an unconstitutional policy restricting religious items. Given Toomer has not identified the necessary actor, the undersigned finds that any First Amendment claims relating to his loss of property should be dismissed without prejudice.

He raises other claims for the first time in his responses to the dispositive motions. Specifically, he raises breach of contract and negligence claims against Summit. Doc. [137]. He also raises additional conditions-of-confinement claims, such as excessively cold cells and fire hazards, that were not raised in his complaint or at the omnibus hearing. Doc. [134], at 4. As noted above, this is improper, and the undersigned will not consider these claims. *See BAC Home Loans Servicing, L.P.*, 447 F. App'x. at 204. The undersigned also notes that it must be mindful of provisions for proper joinder of parties, Fed. R.

Civ. P. 20. Under Rule 20(b), persons may be joined in one action as defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(b). A single inmate joining disparate claims against different defendants violates the limitations on joinder of unrelated claims under Rule 18 and Rule 20. *Id.* Furthermore, the joinder of disparate claims allows a plaintiff to, in effect, circumvent the three-strikes provisions of 28 U.S.C. § 1915 because he  avoids paying multiple filing fees and avoids the risk of obtaining multiple strikes. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Tuft v. Chaney*, 2006 WL 2247813, at *1 (S.D. Tex. Aug. 4, 2006); *see also Patton v. Jefferson Corr. Center*, 136 F.3d 458, 464 (5th Cir. 1998) (recognizing that Section 1915 is intended to prevent creative joinder of actions).

## **RECOMMENDATION**

The undersigned recommends that Defendants Blakeney and Bobo's motion to dismiss be granted and all claims against these Defendants be dismissed. Doc. [119]. It is further recommended that Defendants Mike Ezell, Tyrone Nelson, Amanda Harris, Vital Core Medical, and Summit Food Services motions for summary judgment be granted and all claims against these Defendants be dismissed. Doc. [123, 125, 127]. The undersigned recommends that Defendants Geneva Drummond and Makenzie Stover's motion to dismiss be denied, which leaves Toomer's claims of inadequate medical care against them as Toomer's only surviving claim. Doc. [121].

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk

of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 18th day of May 2023.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE